**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS** (SBN: 310209)
  trichards@singhtraubenlaw.com
**MICHAEL A. TRAUBEN** (SBN: 277557)
  mtrauben@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Plaintiff*
BIG BOSS MUSIC B.V. d/b/a THE SUPERSTAR BROKERS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG BOSS MUSIC B.V. d/b/a THE SUPERSTAR BROKERS, a Netherlands company, | Case No.: 2:23-cv-867 |
| Plaintiff, | **COMPLAINT FOR** |
| v. | **(1) BREACH OF CONTRACT;**<br>**(2) FRAUD;**<br>**(3) FRAUD IN THE INDUCEMENT;** *and*<br>**(4) UNJUST ENRICHMENT** |
| HOLY TOLEDO PRODUCTIONS LLC, an Indiana limited liability company, MATTHEW MARKOFF, an individual, and DOES 1 through 20, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Big Boss Music B.V. d/b/a The Superstar Brokers ("**Big Boss Music**" or "**Plaintiff**"), by and through its undersigned counsel, hereby sues defendants Holy Toledo Productions, LLC ("**Holy Toledo**"), Matthew Markoff ("**Markoff**"), and DOES 1 through 20, inclusive (collectively, "**Defendants**"), and in support thereof states as follows:

## NATURE OF ACTION

1. Plaintiff is a brokering agency that connects its clients, fledgling musical artists, with established high-profile musical artists for, among things, the integration of custom exclusive features from the prominent musical artists into its clients' works. The use of such exclusive features from high profile artists is a well-known technique in the music industry to help bolster the popularity of up and coming artists and their works.

2. This lawsuit arises out of Defendants' fraudulent scheme to induce Plaintiff to pay Defendants substantial sums of money for sham music licenses and bogus features. Defendants' scheme involved a classic bait and switch. Defendants represented to Plaintiff that they maintained certain professional contacts in the music industry and the ability to secure legitimate musical licenses and custom exclusive features that Plaintiff could then license or sell to its clients for use in Plaintiff's clients' own works. However, Defendants' licenses and features were not legitimate, and were either forged or otherwise invalid.

3. Defendants approached Plaintiff with a purported book of business, promising access to, and licensed features from, some of the biggest artists in the world, including, among many others, Lil Wayne, Snoop Dogg, A$AP Rocky, and Chris Brown.

4. Plaintiff enhances its clients' musical recordings by adding superstar talent and instant recognition and attention from popular prerecorded vocal-tracks, unreleased recordings, and custom artist collaborations.

5. Accordingly, Defendants' purported music licenses and custom exclusive features were potentially valuable and of interest to Plaintiff.

6. On January 24, 2022, in reliance upon Defendants' representations and promises concerning their existing licenses, connections with high profile musical artists, and their purported ability to secure legitimate custom exclusive featured artist

performances, Plaintiff Big Boss Music signed an exclusive agency agreement with Defendant Holy Toledo, whereby Plaintiff agreed to appoint Defendant Holy Toledo as its exclusive conduit for features or other arrangements with the multitude of superstar artists from which Defendants identified in claiming it could provide custom features and/or licenses (the "**Agency Agreement**").

7. Defendants purported book of business is expressly set forth in the Agency Agreement's "Schedule "A", including existing licenses with specific superstar artists (ranging from $750 to $7,5000), unreleased exclusives with specific superstar artists (from $1,500 to $15,000 and beyond), and original custom exclusive features with specific superstar artists (from $500 to $100,000 and beyond) (the "**Schedule of Artist Licenses**").

8. In reliance upon the Agency Agreement, and Defendants' corresponding representations and promises related to Defendants' Schedule of Artist Licenses, Plaintiff began offering the licenses, custom exclusive features, and other arrangements Defendants had identified in the Schedule of Artist Licenses to its clients.

9. Defendants solicited and groomed Plaintiff for months with representations and promises, including by providing Defendants' purported music licenses to Plaintiff. It was only Plaintiff was induced to execute the Agency Agreement and transfer large sums of money to Defendants, did Plaintiff discover that the purported licenses and custom exclusive features Defendants provided were knowingly fraudulent and forgeries.

10. This fraudulent scheme not only damaged Plaintiff in out-of-pocket losses, but was also incredibly harmful to Plaintiff's business dealings and relationships.

11. Paramount to Plaintiff's business is the legitimacy of its licenses and features, which permit its clients to publicly release, promote, and sell their tracks featuring a superstar vocal track or collaboration as a properly licensed feature performance.

12. Consequently, Plaintiff's reputation in the music industry as a purveyor of valuable and legitimate licenses and features with high profile artists is the centerpiece of its ability to do business, as its clients repose trust and confidence in Plaintiff to supply legitimate licenses and features.

13. In inducing Plaintiff to pay Defendants significant sums of money for knowingly fraudulent and illegitimate musical licenses and featured artist performances, Defendants directly caused Plaintiff severe hardship and expense, including substantial harm and damage to Plaintiff's reputation and standing in the music industry.

14. Plaintiff's clients directly rely upon Plaintiff for legitimate licenses and features, and by providing bogus, fraudulent licenses and features, Defendants have directly harmed Plaintiff's reputation and ability to do business.

15. The total harm and damage Plaintiff has suffered as direct result of Defendants' fraudulent inducement of Plaintiff to transfer significant sums of money to Defendants in exchange for fraudulent and illegitimate musical licenses and featured artist performances, including the loss of Plaintiff's clients and severe harm and damage to Plaintiff's reputation in the music industry, is in excess of $1,900,000.00.

## THE PARTIES

16. Plaintiff Big Boss Music is foreign corporation organized and existing under the laws of the Netherlands.

17. Upon information and belief, Defendant Holy Toledo is a limited liability company organized and existing under the laws of the State of Indiana, with its principal place of business in Los Angeles County, California.

18. Upon information and belief, Defendant Markoff is an individual residing in Los Angeles County, California.

19. Plaintiff is informed and believes that Defendant Holy Toledo is, and at all times mentioned herein was, a mere shell without sufficient capital and assets and conceived, intended, and used by Defendant Markoff as a device to avoid liability.

20. Specifically, upon information and belief, Holy Toledo is the "alter ego" of Markoff and there exists, and at all times mentioned herein existed, a unity of interest and ownership between Defendants Holy Toledo and Markoff such that any individuality and separateness has ceased and further such that Markoff controls or controlled the business and activities of Holy Toledo.

21. Defendant Holy Toledo was and remains a mere shell, instrumentality and conduit through which Markoff carried and carries on business in the corporate name, exactly as he would have had there been no corporate entity at all, exercising complete control and dominance over such business to the point where any individuality or separateness does not, and at all times herein mentioned, did not, exist.

22. In addition, upon information and belief, Markoff further comingled and continues to comingle his personal assets with Holy Toledo, controlled and continues to control its finances in their entirety, treated and treat its assets as his own, and further engaged and engages in such zealous controlling conduct towards Holy Toledo that such entity was and remains nothing more than a mere instrumentality of Markoff.

23. Upon information and belief, Defendant Holy Toledo is unable to satisfy any judgment against it.

24. Adherence to the fiction of the separate existence of Holy Toledo as an entity separate and distinct from Markoff would permit an abuse of the corporate privilege and would sanction fraud or promote injustice in that Markoff might escape liability for the causes of action set out herein.

25. Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants acted in concert and conspired with or aided and abetted each other to do the acts complained of in this Complaint. Further, Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, all Defendants acted as an agent for the other, and, as such, were at all times mentioned herein acting within the course and scope of such agency.

26. The true names and/or capacities, whether individual, corporate, associate or otherwise of Defendants 1 through 20, inclusive, are unknown to Plaintiff at this time, and Plaintiff, therefore, sues said Defendants by such fictitious names. Plaintiff us informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said

Defendants were a legal cause of the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332 because there exists complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL CLAIMS

29. Plaintiff Big Boss Music is an established and well-respected brokering agency that, among other things, brokers and facilitates custom collaborations with high profile musical talents.

30. Plaintiff Big Boss Music specializes in all aspects of the music industry and maintains firsthand experience at distribution (both major and indie), publishing, marketing and promotion, business management, legal affairs, label & project management, licensing, artist management, sponsorship scouting, record or publishing deal brokering, and digital strategies.

31. Defendant Holy Toledo is based in Sherman Oaks, California, and purports to operate in the music industry.

32. Defendant Markoff holds himself out to the public as the president and sole member of Holy Toledo.

33. Holy Toledo is exclusively owned and operated by Defendant Markoff.

34. In or around November 2021, following an introduction, Plaintiff's representatives and Markoff began exchanging email correspondence and instant messages regarding the prospective Agency Agreement.

35. During these discussions between Plaintiff and Markoff, Markoff repeatedly represented that he had curated a certain established book of business, rights, and licenses as embodied in the Schedule of Artist Licenses, consisting of preexisting music licenses

with specific superstar artists (ranging from $750 to $7,5000), unreleased exclusives with specific superstar artists (from $1,500 to $15,000 and beyond), and original custom exclusive features with specific superstar artists (from $500 to $100,000 and beyond).

36. In addition, Markoff further represented to Plaintiff during these discussions that Defendants had, among other things, (i) secured or were in the process of securing a high-profile feature for Plaintiff; and (ii) secured or were in the process of securing legitimate "untagged" vocals for Plaintiff.

37. To further induce Plaintiff to enter into an agreement with Defendants, within emails and memoranda Markoff sent to Plaintiff in November 2021 and December 2021, Markoff also represented to Plaintiff that he had valid license rights with specific superstar / high-profile artists, which communications and memoranda included supposed copies of his purported "licenses".

38. Specifically, on or around November 29, 2021, Markoff sent Plaintiff his purported "sales guide", which listed numerous licenses and custom exclusives (including corresponding likeness and featured artist rights) he purported to hold for multiple works from high profile artists that Plaintiff could then license from Markoff. A true and correct copy of that "sales guide" is attached hereto as **Exhibit "A"**.

39. In addition, on or around November 29, 2021, Markoff sent Plaintiff a document entitled "2021 TAX SEASON FEATURED GUEST ARTIST REFERENCE GUIDE", which likewise listed numerous licenses and custom exclusives (including corresponding likeness and feature rights) with specific artists Markoff purportedly had authorization to offer to Plaintiff, advising Plaintiff that Plaintiff could sell such licenses or exclusive features artist performance to its clients (the "**Reference Guide**"). A true and correct copy of the Reference Guide is attached hereto as **Exhibit "B"**.

40. In December 2021, Markoff sent Plaintiff purported license agreements with high profile artists such as Chris Brown, Snoop Dogg, and Gucci Mane, further representing that Defendants maintained a working business relationship with these artists

and maintained the authority to license these artists' works and featured performances to Plaintiff and Plaintiff's clients.

41. On or around January 24, 2022, in reliance upon, and induced by, Defendant Markoff's multiple written representations, including, in particular, Markoff's representations related to the Schedule of Artist Licenses, Plaintiff executed the Agency Agreement and appointed Defendants as Plaintiff's exclusive agent and representative for the purpose of marketing, brokering, offering for sale, and selling music licenses and/or custom featured artist performances with any of the artists identified in the Agency Agreement's Schedule of Artist Licenses. A true and correct copy of the Agency Agreement, inclusive of the Schedule of Artist Licenses, is attached hereto as **Exhibit "C"**.

42. In agreeing to exclusively rely upon Defendants for each of the artists identified in the Schedule of Artist Licenses, and in further representing to its own clients that Plaintiff could now offer legitimate licenses and/or features with these artists, Plaintiff relied upon Defendant Markoff's representations.

43. The Schedule of Artist Licenses, however, is a fictitious, sham document designed solely to defraud Plaintiff and unlawfully solicit and induce Plaintiff to sign the Agency Agreement and send large sums of money to Defendant.

44. For example, in connection with a purported featured guest artist custom exclusive arrangement, after contriving various negotiations with A$AP Rocky's management, Defendant demanded approximately $150,000.00 to secure a purported agreement and feature with A$AP Rocky's company, AWGE Entertainment (the "**Fraudulent A$AP Feature**"). A true and correct copy of the Fraudulent A$AP Feature is attached hereto as **Exhibit "D"**.

45. Purportedly signed by a "Josef Gomez" on behalf of AWGE Entertainment, the Fraudulent License was falsely represented by Defendants as a legitimate license for the provision of artist A$AP Rocky's musical services for a custom featured artist performance.

46. Following further investigation, however, it was revealed that the Fraudulent A$AP Feature was in fact entirely illegitimate and a complete fraud.

47. Plaintiff and its client contacted A$AP Rocky's actual management company which readily disavowed any knowledge of the Fraudulent A$AP Feature and the purported authority of "Josef Gomez" to grant any such rights.

48. Upon further scrutiny, it was discovered that all of Defendants' purported licenses and/or other purported rights to provide custom features were fraudulent and illegitimate.

49. To date, despite fully performing its obligations under the Agency Agreement, Plaintiff has never received nothing of value from Defendants.

50. Instead, as a direct and proximate result of Plaintiff's reasonable reliance upon Defendants' false promises and misrepresentations, Plaintiff transferred significant sums of money to Defendant and further suffered substantial harm and damage to Plaintiff's reputation in the music industry, including the loss of numerous clients and business relationships.

## COUNT I
## BREACH OF CONTRACT

51. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

52. On or around January 24, 2022, in reliance upon, and induced by, Defendant Markoff's multiple written representations, Plaintiff executed the Agency Agreement and appointed Defendants as Plaintiff's exclusive agent and representative for the purpose of marketing, brokering, offering for sale, and selling music licenses and/or custom featured artist performances with any of the artists identified in the Agency Agreement's Schedule of Artist Licenses.

53. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agency Agreement.

54. Nonetheless, Defendants have completely failed and/or refused to perform their promises and obligations under the Agency Agreement.

55. To date, Defendants have failed and/or refused to provide Plaintiff with any legitimate musical licenses or custom featured artist performance of any kind or provide Plaintiff anything of value.

56. As a direct and proximate result of Defendants' material and continuing breaches of the Agency Agreement, Plaintiff has been damaged in an amount no less than $1,900,000.00, plus prejudgment interest at the statutory rate.

## COUNT II
## FRAUD

57. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

58. Following the execution of the Agency Agreement, and through their alleged performance thereof, Defendants presented Plaintiff with the Fraudulent ASAP License and other sham musical licenses and custom exclusive featured artist performance agreements (collectively, the "**Fraudulent Licenses and Agreements**"), falsely representing to Plaintiff that the Fraudulent Licenses and Agreements were legitimate and executed by individuals with the lawful authority to grant the rights and/or enter the agreements contained therein.

59. At all times relevant, Defendant were aware that the Fraudulent Licenses and Agreement were illegitimate and fake and deliberately misled Plaintiff into believing that the Fraudulent Licenses and Agreements were legitimate.

60. Plaintiff justifiably relied upon Defendants' representations to its severe harm and detriment and when it paid Defendants significant sums of money for the Fraudulent Licenses and Agreements.

61. The Fraudulent License were illegitimate and of no value.

62. As a direct and proximate result of Plaintiff's reasonable reliance upon Defendants' misrepresentations, Plaintiff has suffered significant financial harm and

damage, including, but not limited to, Plaintiff's reputation in the music industry, the centerpiece of its ability to do business, as its clients repose trust and confidence in Plaintiff to supply legitimate licenses and featured artist performances.

63. Plaintiff's justifiable reliance on Defendant's contractual and related promises was a substantial factor in causing the significant harm and damage Plaintiff has suffered.

64. Defendants' conduct was done intentionally and willfully with the purpose and design to defraud Plaintiff. Defendants knew that their conduct would cause Plaintiff great financial harm and reputational damage. Defendants' conduct was wanton, willful and completely devoid of any legitimate purpose. Left unchecked, Defendants will seek to defraud and cause harm to others. As a result, Plaintiff is entitled to award of punitive damages to both punish Defendants and to dissuade them from engaging in similar wrongful conduct in the future all in amount subject to proof at trial.

## COUNT III
## FRAUD IN THE INDUCEMENT

65. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

66. To induce Plaintiff to enter into and execute the Agency Agreement and agree to pay Defendants substantial sums of money for purported musical licenses and custom featured artist performances, Defendants made material misrepresentations and false assurances to Plaintiff, including, without limitation, the promise that the Schedule of Artist Licenses was authentic, and that Defendants could and would be able to provide legitimate musical licenses and custom featured artist performances.

67. The foregoing representations were false when made and the foregoing material omissions were willfully concealed.

68. Defendants' misrepresentations and false assurances, along with their material omissions, were deliberately designed to induce and entice Plaintiff, at Plaintiff's significant detriment and expense, to transfer significant sums of money to Defendants.

69. As a direct result of Defendants' misrepresentations and false assurances,

Plaintiff has suffered significant harm and damage to its reputation in the music industry, including irreparable damage to its relationship with numerous clients.

70. At all times relevant, Defendants knew that Plaintiff was relying upon Defendant's foregoing misrepresentations in agreeing to incur costs and to transfer significant sums of monies to Defendants.

71. At the time Defendants made the foregoing material representations and promises to Plaintiff, such representations and promises were false and, in addition, Defendants had no intention of fully performing under the terms of the parties' Agency Agreement, and knew that all such representations were false when made.

72. Defendants made such representations pertaining to promising future action with no intention of performing or with a positive intention of not performing on such promises.

73. Plaintiff acted in justifiable reliance upon Defendants' material misrepresentations, false promises, and false assurances as, at the time Defendants made such representations, Plaintiff did not know of the falsity of the representations and, in addition, was not aware of Defendants' complete lack of intention to fully perform under the Agency Agreement, and could not, in the exercise of reasonable diligence, have discovered Defendants' positive intention of not performing.

74. As a direct and proximate result of Plaintiff's justifiable reliance upon Defendants' fraudulent misrepresentations, Plaintiff has suffered significant and extensive damages and financial injury, including significant harm and damage to its reputation in the music industry, the centerpiece of its ability to do business, as its clients repose trust and confidence in Plaintiff to supply legitimate licenses and featured artist performances.

75. Defendants' conduct was done intentionally and willfully with the purpose and design to defraud Plaintiff. Defendants knew that their conduct would cause Plaintiff great financial harm and reputational damage. Defendants' conduct was wanton, willful and completely devoid of any legitimate purpose. Left unchecked, Defendants will seek to defraud and cause harm to others. As a result, Plaintiff is entitled to award of punitive

damages to both punish Defendants and to dissuade them from engaging in similar wrongful conduct in the future all in amount subject to proof at trial.

## COUNT IV
## UNJUST ENRICHMENT

76. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

77. Plaintiff conferred a benefit upon Defendants when Plaintiff paid significant sums of money to Defendants for the Fraudulent Licenses and Agreement, all of which Defendants have retained in their entirety.

78. Defendants have knowledge of this benefit.

79. Defendants collected and retained this benefit and continue to retain this conferred monetary benefit.

80. Defendants have failed and refused, and continue to fail and refuse, to provide anything of value in exchange for the significant sums of money Defendants induced Plaintiff to transfer to Defendants.

81. Under the circumstances, it would be inequitable for Defendants to retain all such conferred monetary benefits, all of which are rightfully belonging to Plaintiff.

82. Defendants' failure to repay Plaintiff has directly and proximately damaged Plaintiff.

83. Defendants will be unjustly enriched if they are allowed to retain the benefits conferred upon them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the entry of Judgment in its favor and against Defendants, jointly and severally, as follows:

1. For not less than $1,900,000.00;
2. For all actual, general, special, economic, incidental, and compensatory damages according to proof at trial, or as otherwise permitted by law;
3. For punitive damages;

Singh, Singh & Trauben, LLP

4.  For prejudgment and post-judgment interest on all damages, at the legal rate;

5.  For costs of suit incurred herein;

6.  For prejudgment interest; *and*

7.  For all such other relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues in this action so triable.

DATED: February 3, 2023            Respectfully Submitted,

**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS**

By:_____
Thomas K. Richards

*Attorneys for Plaintiff*
BIG BOSS MUSIC B.V.
d/b/a THE SUPERSTAR BROKERS